# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SANDIE BOYDSTON,

        Plaintiff,

vs.                                                    Civ. No. 02-1448 MV/RHS

ANN M. VENEMAN, Secretary,
U.S. DEPARTMENT OF INTERIOR,

        Defendant.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion for Partial Summary Judgment, filed February 19, 2004 **[Doc. No. 20]** and Plaintiff's Motion for Summary Judgment on Attorney's Fees, filed March 22, 2004 **[Doc. No. 27]**.  The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, finds that Defendants's motion is well taken and will be **GRANTED** and that Plaintiff's motion is not well taken and will be **DENIED**.

## BACKGROUND

Plaintiff is a former employee of the United States Department of Agriculture ("USDA"). During her employment with the USDA, Plaintiff worked as a GS-6 level Technical Assistant at the Soil Conservation Service in Albuquerque, New Mexico.  In July 1991, Plaintiff's supervisor requested that her position be upgraded.  This request was denied.  Thereafter, on November 1, 1991, Plaintiff filed a Complaint with the USDA's EEO Office.  By letter dated January 14, 1992, the USDA advised Plaintiff that her complaint had been received and agreed to investigate the agency's failure to upgrade her position to the GS-7 level.

In September 1995, Plaintiff and the USDA entered into a Settlement Agreement resolving all of the issues in Plaintiff's Complaint.  At the time the Settlement Agreement was executed, Plaintiff was represented by counsel.  In the Settlement Agreement, the USDA agreed, *inter alia*, to: reinstate Plaintiff to her former position; pay Plaintiff the difference between what she would have earned if she had not been terminated and what she earned during the period between her termination and her reinstatement; pay Plaintiff a lump sum, tax-free payment of $7,000; and pay Plaintiff "proven compensatory damages to the accepted issue of this complaint."  The Settlement Agreement directed Plaintiff to present in writing and with specificity her claim for compensatory damages to the Compensatory Damages Unit of the Office of Civil Rights Enforcement which then would make a determination as to the amount of any compensatory damages to be awarded.  Also in the Settlement Agreement, Plaintiff agreed, *inter alia*, to resign immediately upon her reinstatement and to withdraw her Complaint.  Finally, the parties agreed that, if the terms of the Settlement Agreement were not carried out, Plaintiff would be entitled to request a reinstatement of her Complaint or to seek enforcement of the Agreement.

In compliance with the terms of the Settlement Agreement, Plaintiff submitted to the Compensatory Damages Unit a claim for $372,207.52 in compensatory damages.  In a Final Agency Decision dated February 11, 1997, the USDA rejected Plaintiff's claim for compensatory damages in its entirety.  The decision was based on two grounds.  First, the USDA found that Plaintiff had failed to show a causal relationship between the discriminatory conduct and the damages claimed.  Second, the USDA found that compensatory damages could not be awarded because the discriminatory conduct upon which the damages claim was premised occurred prior to the effective date of the Civil Rights Act of 1991.

-2-

Plaintiff appealed this decision to the Equal Employment Opportunity Commission, Office of Federal Operations ("EEOC"). In a decision dated July 25, 2000, the EEOC affirmed the USDA's denial of an award of compensatory damages, agreeing that the Civil Rights Act of 1991 did not apply retroactively to authorize an award of compensatory damages. Plaintiff requested reconsideration of the EEOC decision. On August 14, 2002, the EEOC issued a Denial of Request for Reconsideration, finding not only that the Civil Rights Act of 1991 cannot be applied retroactively to allow for an award of compensatory damages but also that the doctrine of promissory estoppel could not be invoked to impose liability on Defendant.

Plaintiff commenced the instant action on November 15, 2002, filing a Complaint for Discrimination and Enforcement of Settlement Agreement. On February 19, 2004, Defendant filed its Motion for Partial Summary Judgment on Plaintiff's claim for compensatory damages. Thereafter, on March 22, 2004, Plaintiff filed its Response to Defendant's Motion for Partial Summary Judgment on Compensatory Damages and Plaintiff's Motion for Summary Judgment on Attorney's Fees. Defendant's Reply to Plaintiff's Response to Defendant's Motion for Partial Summary Judgment followed on April 22, 2004.

## STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim.  *See Celotex Corp. v. Catrett*,  477 U.S. 317, 325 (1986).  Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted).  Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial."  *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Anderson*, 477 U.S. at 248.  Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence."  *Kaus*, 985 F. Supp at 1281.

-4-

## DISCUSSION

A.   Enforcement of the Settlement Agreement

    1.   Express Terms of the Settlement Agreement

As set forth above, Plaintiff's cause of action arose in July 1991. The Settlement Agreement provides for the USDA to pay Plaintiff "proven compensatory damages." Until the Civil Rights Act of 1991 (the "Act") was passed on November 21, 1991, however, a plaintiff in a Title VII discrimination action was not entitled to recover compensatory damages. The Act contains a provision for compensatory and punitive damages for a plaintiff asserting a claim for intentional discrimination under Title VII. *See* 42 U.S.C. §1981a(a)(1). The Supreme Court, however, has specifically held that this provision does not apply retroactively to cases based on conduct that occurred before passage of the Act. *See Landgraf v. USI Film Products, et al.*, 511 U.S. 244, 286 (1994). As a matter of law, Plaintiff thus was not entitled to recover compensatory damages on her discrimination claims which were based on conduct that occurred in July 1991. *See Steinle v. Boeing Co.*, 24 F.3d 1250 (10th Cir. 1994) (holding that, under *Landgraf*, plaintiff, whose lawsuit was pending in district court when the Act was passed, was not entitled to amend the pretrial conference order to add a claim for compensatory damages under the Act).

In a settlement agreement, a federal agency is prohibited from incurring a financial liability that it could not legally incur in the event that a finding of discrimination were made in the underlying case. *See Thompson v. Sullivan*, EEOC No. 05910886, 1992 WL 1374365 (E.E.O.C. Mar. 11, 1992). For example, in *Jacobsohn v. Shalala*, EEOC No. 0593069, 1994 WL 733180 (E.E.O.C. June 2, 1994), the appellant had filed an EEO complaint alleging age and sex discrimination against the Department of Health and Human Services. In settlement of the appellant's claims, the parties

entered into an agreement that provided for the payment of $50,000 in liquidated damages. Liquidated damages, however, are not available to federal sector employees in the administrative process. Accordingly, the EEOC held that the liquidated damages provision of the agreement was a nullity and could not be enforced. The EEOC further held that the agreement would be enforced *without* the $50,000 liquidated damages provision but gave the appellant the option of voiding the agreement and having her underlying EEO complaint reinstated.

In the instant case, Plaintiff was not entitled to recover compensatory damages under Title VII. The USDA thus did not have the authority to contract in the Settlement Agreement to pay such damages. Accordingly, that portion of the Settlement Agreement which provides for compensatory damages is a nullity and is unenforceable. *See id.* Although the Settlement Agreement is enforceable absent the compensatory damages provision, it is also voidable at Plaintiff's option and, if she chooses, she may have her underlying EEO Complaint reinstated. *See id.*

2.    Equitable Estoppel

Plaintiff does not dispute that Title VII did not permit an award of compensatory damages prior to November 21, 1991. Nonetheless, Plaintiff contends that this Court may apply the doctrine of equitable estoppel to enforce that portion of the Settlement Agreement which provides for the payment of compensatory damages.

The traditional elements of estoppel are: (1) the government agency must have known the facts; (2) the government agency must have intended that its conduct would be acted upon or must have so acted that the plaintiff had the right to believe that it was so intended; (3) the plaintiff must have been ignorant of the true facts; and (4) the plaintiff must have relied on the government agency's conduct to its injury. *See Federal Deposit Ins. Corp. v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994).

In addition, "to successfully assert estoppel for unauthorized acts of government agents, the asserting party must show affirmative misconduct on the part of the government." *Id.* The Tenth Circuit has explained that affirmative misconduct "is a high hurdle for the asserting party to overcome," noting that "the erroneous advice of a government agent does not reach the level of affirmative misconduct." *Id.* at 1490. Finally, the plaintiff's reliance on the government agency's conduct must be "reasonable in that [the plaintiff] did not know nor should it have known that its adversary's conduct was misleading." *Heckler v. Community Health Servs. of Crawford City, Inc.*, 467 U.S. 51, 59 (1984).

Application of the estoppel doctrine against the government is disfavored and may be invoked "only when it does not frustrate the purpose of the statutes expressing the will of Congress or unduly undermine the enforcement of the public laws." *Hulsey*, 22 F.3d at 1489. In *Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990), the respondent, not wishing to exceed a statutory limit on earnings that would disqualify him from a disability annuity, sought advice from a federal employee and received erroneous information. In reliance on the advice, he earned more than permitted by the eligibility requirements of the relevant statute and lost six months of benefits. The respondent claimed that the erroneous and unauthorized advice should give rise to equitable estoppel against the government and requested that the court order payment of the benefits contrary to the statutory terms. Although declining to announce a rule that no estoppel will lie against the government in any case, the Supreme Court held as follows:

> Money may be paid out only through an appropriation made by law; in other words, the payment of money from the Treasury must be authorized by a statute. All parties here agree that the award respondent seeks would be in direct contravention of the federal statute upon which his ultimate claim to the funds must rest. . . . The benefits respondent claims were not "provided by" the relevant provision of the subchapter; rather, they were specifically denied. It follows that Congress has appropriated no

money for the payment of the benefits respondent seeks, and the Constitution prohibits that any money "be drawn from the Treasury" to pay them.

*Id.* at 424.  The Supreme Court further stated that its holding applies to claims to be paid from general appropriations:

> The general appropriation for payment of judgments . . . does not create an all-purpose fund for judicial disbursement.  A law that identifies the source of funds is not to be confused with the conditions prescribed for their payment.  Rather, funds may be paid out only on the basis of a judgment based on a substantive right to compensation based on the express terms of a specific statute.

*Id.* at 432.

It thus is clear that, under *Richmond*, payment of federal funds may only be made pursuant to a substantive right to compensation based upon the express terms of a specific statute.  Moreover, in the absence of a statutory provision expressly authorizing payment, a party may not compel payment by invoking the doctrine of estoppel.  In the instant case, Plaintiff's discrimination claims are governed by the provisions of Title VII in effect in July 1991.  At that time, the Act did not entitle a plaintiff to recover compensatory damages.  Accordingly, applying *Richmond* to the facts herein, the Court may not invoke the doctrine of equitable estoppel to order payment of compensatory damages.

Moreover, assuming *arguendo* that equitable estoppel is an available remedy, the Court finds as a matter of law that the elements of estoppel are not met.  First, in connection with the Settlement Agreement, Plaintiff was represented by counsel who should have known that Plaintiff was not entitled to compensatory damages and that, consequently, the USDA could not bind the government to pay such damages.  Plaintiff's reliance on the USDA's alleged misrepresentations thus was not reasonable.  In addition, Plaintiff had the means to determine the veracity of Defendants'

representations and the status of the law.  Her failure to do so precludes her from now claiming detrimental reliance.  *See Heckler*, 467 U.S. at 59 n.10.  Finally, Plaintiff has not shown that the USDA's promise to pay compensatory damages was motivated by anything other than an erroneous belief that it was authorized to pay such damages.  Absent evidence of a more nefarious motive, the USDA's promise does not rise to the level of affirmative misconduct.

       3.     <u>Reformation of Contract and Restitution</u>

       In the alternative, Plaintiff argues that reformation of contract and restitution are appropriate remedies, citing to Sections 155 and 158 of the Restatement (Second) of Contracts.  Specifically, Plaintiff contends that the parties mistakenly included front pay as part of compensatory damages and, because front pay is not an element of compensatory damages and because compensatory damages are not available, she now should be awarded damages in the form of front pay.  Under Section 155, where a writing fails to express an agreement because of a mistake of both parties as to the contents or effect of the writing, the Court may reform the writing to express the parties' agreement.  This provision is not applicable here, as the agreement executed by the parties accurately reflects the terms of the agreement reached by the parties.  This is not a case where a material term of the agreement was omitted.  *See Restatement (Second) of Contracts* §155, illustration 1 (2003).  Reformation thus is not an available remedy.

       Similarly, Section 158 does not provide a mechanism for this Court to award Plaintiff front pay.  Section 158 applies only to those cases where the parties have not agreed with respect to a term that is necessary to a determination of their respective rights and duties.  This is not the situation here.  Rather, Plaintiff essentially requests that the Court add a term to the Settlement Agreement requiring the USDA to pay her an unspecified amount of front pay.  Such a remedy is not available.

B.     Attorney's Fees

Finally, Plaintiff contends that, as the prevailing party in her discrimination claims, she is entitled to attorney's fees pursuant to 42 U.S.C. §2000e-5(k), which provides:

> (k) Attorney's fee; liability of Commission and United States for costs
>
> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

In support of her request, Plaintiff relies upon *Chicano Police Officer's Association v. Stover*, 624 F.2d 127 (10th Cir. 1980).  In *Stover*, the Tenth Circuit held that, where a discrimination action is settled by agreement rather than court decision, a party can be a prevailing party for purposes of §2000e-5(k) so long as "the basic objectives [the] plaintiff[] seek[s] from the lawsuit have been achieved or furthered in a significant way" and the plaintiff's conduct "played a significant role in achieving the objective."  *Id.* at 131.  This is true even if the agreement does not designate the party as the prevailing party and is silent as to attorney's fees.  *See id.*  Plaintiff contends that, under this standard, she is a prevailing party under the Settlement Agreement because she collected a payment of $27,692.79 in back pay and because her conduct in negotiating the Settlement Agreement played a significant role in achieving this payment.

At this stage of the litigation, the Court does not find it appropriate to address the issue of attorney's fees and make a determination regarding Plaintiff's status as a prevailing party.  Until the instant action for discrimination is fully adjudicated, the Court cannot determine whether Plaintiff is entitled to attorney's fees.  Once a decision on the merits of this action has been reached, Plaintiff may file a motion for attorney's fees.

-10-

## CONCLUSION

The portion of the Settlement Agreement providing for compensatory damages is not enforceable.  Moreover, the Court may not invoke the doctrine of equitable estoppel in order to compel payment of compensatory damages.  Accordingly, the Settlement Agreement is enforceable without the provision for compensatory damages.  Plaintiff also has the option of voiding the Settlement Agreement and having her underlying EEO Complaint reinstated.  Plaintiff's request for attorney's fees is not yet properly before this Court.  Plaintiff may make a motion for attorney's fees once a decision on the merits has been reached.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Partial Summary Judgment is **GRANTED** and that Plaintiff's Motion for Summary Judgment on Attorney's Fees is **DENIED**.

**DATED** this 17th day of August, 2004.

_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
Gilbert J. Vigil

Attorney for Defendant:
Michael Hoses